**BRAZOS RIVER AUTHORITY,**
Appellant,

v.

**Lyndell SIMS et ux., Appellees.**

No. 6078.

Court of Civil Appeals of Texas,
Waco.

Feb. 21, 1980.

231

David B. Kultgen, Beard & Kultgen, Waco, for appellant.

Joe B. Cannon, Cannon, Cannon & Reed, L. L. Geren, Bradley & Geren, Groesbeck, for appellees.

HALL, Justice.

Appellees Lyndell Sims and wife owned an undivided 74.8% interest in a 176.25-acres tract located in Limestone County. Appellant Brazos River Authority brought this suit against appellees to condemn appellees' fee title to a particularly described tract containing 105.85 acres out of the 176.25 acres, and additionally to condemn two particularly described flood easements of 2.30 acres and 2.89 acres, respectively, out of the 176.25 acres. Appellant needed the land and easements it sought for the construction, operation, and maintenance of the Sterling C. Robertson Dam and Lake Limestone on the Navasota River in Limestone, Leon and Robertson Counties.

Appellant excluded from its condemnation of the 105.85 acres all oil, gas, and other minerals in, on, or under the land, but under its statement of condemnation, operations for the recovery of any such minerals could not thereafter be conducted on the premises. The 105.85-acres tract was rectangular shaped, and it was located between elevation 363 feet above mean sea level on its east end and the Navasota River on its west end.

The easements condemned by appellant were for the purpose of flooding, overflowing and inundating the easement tracts with water which would be temporarily impounded in the lake from time to time by appellant's use of the dam. The 2.30 acres easement adjoined the east end of the 105.-85 acres taken. It was situated between elevation 363 feet above mean sea level and elevation 366 feet. The 2.89 acres easement was between elevation 366 feet and elevation 370 feet. Under appellant's statement of condemnation, the easements it sought included the following terms and conditions:

1. Appellant shall never be liable to appellees, or to anyone holding under them, for damage of any kind to the easement tracts or to anything located thereon, caused by impoundment or retardation of flow of water by the dam;

2. No structures of any kind, other than fences, roads and similar structures, and other than such boathouses, boat docks, boat launching facilities and other similar structures as may be permitted by appellant shall be permitted on the 2.30 acres easement tract;

3. Waters impounded by the Dam and covering any part of the easement tracts at any time shall be open to the public; and

4. Appellant's employees and agents shall be permitted to come upon the premises of both easement tracts and to bring machinery and equipment thereon as may be reasonably necessary for the construction, operation and maintenance of the dam and the lake.

The date of taking by appellant was May 24, 1978. Under the parties' stipulations, the only issue for trial was appellees' damages; and appellees assumed the burden of proof. Appellees did not seek damages to the remainder property retained by them above the easements.

The case was tried to a jury. It was submitted to the jury on five special issues, with instructions by the court fully explaining the extent, limitations and conditions of appellant's takings. The jury made these answers to the issues:

1. At the time of taking, the market value of the 105.85 acres, considered as severed land, was $95,265.00.

2. Immediately prior to the taking of the easement, the market value of the 2.30-acres tract, considered as severed land, was $2,070.00.
3. Immediately after the taking of the easement, the market value of the 2.30-acres tract, considered as severed land, was $0.00.
4. Immediately prior to the taking of the easement, the market value of the 2.89-acres tract, considered as severed land, was $2,601.00.
5. Immediately after the taking of the easement, the market value of the 2.89-acres tract, considered as severed land, was $2,167.50.

Judgment was rendered on the verdict awarding appellees a recovery of $76,650.50 against appellant, and awarding appellant the land and easements it condemned.

Appellant seeks reversal of the judgment and remand of the case for another trial on these assignments of error:

1. The jury's answer to special issue 1 is against the great weight of the evidence.
2. The jury's answer to special issue 2 is against the great weight of the evidence.
3. The jury's answer to special issue 3 is not supported by any evidence.
4. The jury's answer to special issue 3 is against the great weight of the evidence.

Appellees pray for affirmance of the judgment, but they also ask for the opportunity to file a remittitur if we should determine that the judgment is excessive only by reason of its being based on the jury's answer to special issue 3.

We need not detail the testimony of the witnesses. Testimony favorable to appellees was given by them and by friends and relatives who expressed familiarity with the value of appellees' property by reason of land sales in the area, by personal ownership of land in the area, and by reason of having bought and sold land in and around Limestone County over a long period of time. The testimony of appellees and their witnesses placed the value of the 105.85 acres taken, and the value of both easement premises prior to their taking, at $900 to $1,000 per acre. Additionally, appellees testified that the 2.30 acres in the lower easement had no value after the taking. Appellant's value witnesses were two professional appraisers who had been employed by appellant for land appraisals and testimony in hearings before condemnation commissions and in court trials in connection with appellant's acquisition of property for construction of the dam and the lake. The evidence shows that these witnesses received $3,000 to $4,000 per year from appellant for these services. Their testimony reflected that the value of the 105.85 acres taken, and the value of both easement premises prior to their taking, was $575 to $585 per acre; that the value of the 2.30 acres in the lower easement tract after the taking was $335 to approximately $375 per acre; and that the value of the 2.89 acres in the higher easement tract after the taking was $425 to $485 per acre.

The answers to the special issues show the jury found that the value of the 105.85 acres taken, and the value of the acreage in both easement tracts prior to the takings, was $900 per acre; that the 2.30 acres in the lower easement tract had no value after the taking; and that the 2.89 acres in the higher easement tract had a value of $750 per acre after the taking. Appellant does not question the before and after values of the 2.89 acres found by the jury.

Conflicts in the testimony of the parties' property value witnesses in eminent domain cases are common. These conflicts simply raise questions for the trier of the facts. Here, it was the jury's prerogative and duty as the fact-finder to consider the positions, interests, experiences, and knowledge of the witnesses, weigh all of the proof, pick out what they believed to be the most credible parts, and make their findings accordingly.

█ We have given appellant's analyses of the evidence and its arguments based thereon careful study. Nevertheless, our consideration of all of the evidence convinces us that the jury's answers to special

issues 1 and 2 are not so contrary to the great weight and preponderance of all of the evidence as to be manifestly unjust. That is the test. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1952). Appellant's contentions relating to those special issues are therefore overruled.

 However, it is the settled rule that where an easement taken by condemnation leaves the landowner with some beneficial use of the land, then the damages for the condemnation thereof, *as a matter of law*, will be less than the value of the fee title. *Thompson v. Janes*, 151 Tex. 495, 251 S.W.2d 953, 956 (1952); *Texas Pipe Line Co. v. Hunt*, 149 Tex. 33, 228 S.W.2d 151, 155 (1950). In our case, appellees retain possession and use of both easement tracts, albeit their use of the easement premises will be severely restricted under the conditions of appellant's takings and will continue to be interrupted (as it has been in the past) by infrequent floodings lasting only a few days. We therefore hold that, as a matter of law, appellees' testimony that the 2.30 acres in the lower easement tract would have no value after the taking does not support the jury's finding of no value; and we sustain appellant's "no evidence" complaint to that effect.

It follows that the judgment is excessive to the extent that it is based on the jury's finding that the 2.30-acres tract had no value after the taking. However, this error does not require a retrial of the case if the excessiveness may be and is corrected by a remittitur reasonably based upon the evidence.

The only testimony of probative worth placing an after-taking value upon the 2.30 acres came from appellant's two appraiser witnesses. They set that value at $335 per acre and $375 per acre. It is our view and finding that the verdict and judgment are excessive in the amount of $770.50. See *Texas Pipe Line v. Hunt*, supra; and *State v. Evans*, 340 S.W.2d 99 (Tex.Civ.App.—Waco 1960, writ ref'd n. r. e.).

The judgment of the trial court will be reformed and affirmed if within 15 days from the date of this opinion appellees file a remittitur of $770.50. If this remittitur is not timely filed, the judgment will be reversed and the case will be remanded for trial.

## ON FILING OF REMITTITUR

The $770.50 remittitur suggested in our original opinion has been filed by appellees. Accordingly, appellant's complaints are overruled.

The judgment is reformed to provide that appellees shall recover the sum of $75,880.00 from appellant for their damages. With that modification, the judgment is affirmed.